IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KENNETH H. HUGHES, INC., )<br><br>Petitioner, )<br><br>vs. )<br><br>ALOHA TOWER<br>DEVELOPMENT, CORP., )<br><br>Respondent. )<br>_____ ) | CV. NO. 09-00277 DAE-BMK |

ORDER (1) GRANTING PETITIONER'S MOTION TO CONFIRM
ARBITRATION AWARD; AND (2) DENYING RESPONDENT'S MOTION TO
<u>VACATE OR MODIFY ARBITRATION AWARD</u>

On September 8, 2009, the Court heard Petitioner's Motion to

Confirm Arbitration Award and Respondent's Motion to Vacate or Modify

Arbitration Award.  Elijah Yip, Esq., and Jeffrey Portnoy, Esq., appeared on behalf

of Petitioner; Karin Holma, Special Deputy Attorney General, and Michael Carroll,

Special Deputy Attorney General, appeared on behalf of Respondent.  After

reviewing the motions and the supporting and opposing memoranda, the Court

**GRANTS** Petitioner's Motion to Confirm Arbitration Award and **DENIES**

Respondent's Motion to Vacate or Modify Arbitration Award.

## BACKGROUND

This matter involves an arbitration award for damages relating to a contract dispute over development of the Aloha Tower complex in Honolulu.

Aloha Tower Development Corporation ("Respondent") was established by the Hawaii Legislature as a "public body corporate and politic, public instrumentality, and agency of the State for the purpose of undertaking the redevelopment of the Aloha Tower complex." Haw. Rev. Stat. § 206J-1. This corporation's board of directors consists of various government administrators and three members from the public at large appointed by the governor. Id. § 206J-4(b).

Kenneth H. Hughes, Inc. ("Petitioner"), a Texas corporation, entered into a Development Agreement with Respondent involving waterfront development projects at Aloha Tower. (Doc. # 1 at 2.) These projects included ten public infrastructure projects and one private development on Piers 5 and 6. (Doc. # 17 at 3.) Paragraph 21of the Development Agreement required that any claims or disputes, not resolved in good faith, be brought before a mediator or arbitrator within the jurisdiction of the Federal Arbitration Act. (Doc. # 11 Ex. D at 12.)

Efforts to obtain funding and other initiatives for the project failed. (Doc. # 17 at 4.) The parties then revised the scope of the project, but further negotiations fell through. (Id. at 5-6.)

On October 23, 2007, Petitioner filed a Demand for Arbitration before Dispute Prevention and Resolution, Inc., with Mr. Keith Hunter selected as the arbitrator ("the arbitrator").  (Doc. # 1 Ex. 2.)  Petitioner claimed that Respondent failed to negotiate in good faith regarding the development of Piers 5 and 6.  (Doc. # 1 at 2.)  Petitioner sought attorneys' fees and costs, and contract damages or reliance damages, restitution, or damages for the taking of vested rights.  (Id. at 3.)  Respondent filed a counterclaim.  (Id.)

On April 29, 2009, the arbitrator issued a Partial Final Decision and Award, awarding Petitioner $903,592.49 in reliance damages plus $271,755.44 in pre-award interest, plus attorneys' fees and costs, and denied Respondent's counterclaim.  (Doc. # 1 Ex. 5 at 84-85.)  On June 2, 2009, the arbitrator issued a Final Decision and Award, incorporating the previous awards and awarding Petitioner $361,804.07 in attorneys' fees and $62,899.73 in costs.  (Doc. # 1 Ex. 6.)  The arbitrator also ruled that the awarded sum shall accrue 10% per annum interest until the sum is paid in full by Respondent to Petitioner.  (Doc. # 1 Ex. 5 at 85.)

Petitioner and Respondent have now filed cross motions for this Court to confirm, or vacate or modify, the arbitration award.  See 9 U.S.C. §§ 9-11.

On June 16, 2009, Petitioner filed its Motion to Confirm Arbitration Award.  (Doc. # 1.)  On August 3, 2009, Respondent filed its Opposition.  (Doc. # 14.)  On August 10, 2009, Petition filed its Reply.  (Doc. # 16.)

On July 28, 2009, Respondent filed its Motion to Vacate or Modify Arbitration Award.  (Doc. # 11.)  On August 20, 2009, Petitioner filed its Opposition.  (Doc. # 17.)  On August 28, 2009, Respondent filed its Reply.  (Doc. # 18.)

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides limited circumstances under which a federal court may vacate or modify a binding arbitration award.  See 9 U.S.C. §§ 10-11.  This authority is extremely narrow and designed to preserve due process but not to permit unnecessary intrusion into private arbitration procedures.  Kyocera Corp. v. Prudential-Bache Trade Servs., 341 F.3d 987, 997 (9th Cir. 2003) (en banc).

The FAA empowers a federal court to vacate an arbitration decision where:

(1) the award was procured by corruption, fraud, or undue means;

(2) there was evident partiality or corruption in the arbitrators, or either of them;

4

> (3) the arbitrators were guilty of <u>misconduct</u> in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators <u>exceeded their powers</u>, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis added).  The Ninth Circuit has interpreted Section (4) of the FAA, when an arbitrator exceeds its powers, to encompass situations where an arbitrator's decision is "completely irrational" or exhibits a "manifest disregard of law." <u>Kyocera Corp.</u>, 341 F.3d at 997 (citations omitted).

Because the FAA explicitly lists the grounds upon which a court may vacate, courts will not find a manifest disregard of the law where an arbitrator merely interprets or applies the governing law incorrectly, and confirmation is required even if an arbitrator makes an erroneous finding of fact.  <u>Id.</u>; <u>Arbitration Between Bosack v. Soward</u>, 573 F.3d 891, 899 (9th Cir. 2009).  Rather, "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." <u>Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.</u>, 44 F.3d 826, 832 (9th Cir. 1995); <u>Carter v. Health Net of Cal, Inc.</u>, 374 F.3d 830 (9th Cir. 2004); <u>see Arbitration Between Bosack</u>, 573 F.3d 891.  The rationale is that the parties bargained for the arbitrator's interpretation, not a judicial interpretation.  <u>See Stead</u>

Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, 886 F.2d 1200,

1206 (9th Cir. 1989).  As the Ninth Circuit has summarized:

> [T]he Federal Arbitration Act allows a federal court to correct a
> technical error, strike all or a portion of an award pertaining to an
> issue not at all subject to arbitration, and to vacate an award that
> evidences affirmative misconduct in the arbitral process or the final
> result or that is completely irrational or exhibits a manifest disregard
> for the law.

Kyocera Corp., 341 F.3d at 997-98.

Courts may also, in limited circumstances, vacate an arbitration award

that is legally irreconcilable with the undisputed facts.  Coutee v. Barrington

Capital Group, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003).  As facts and law are

often intertwined, "an arbitrator's failure to recognize undisputed, legally

dispositive facts may properly be deemed a manifest disregard for the law."  Id.

However, where an arbitrator considered and ruled on the factual dispute, the

district court has no authority to re-weigh the evidence.  Id. at 1134.

The FAA empowers a federal court to modify an arbitration decision:

> (a) Where there was an evident material miscalculation of figures or
> an evident material mistake in the description of any person, thing, or
> property referred to in the award.

> (b) Where the arbitrators have awarded upon a matter not submitted to
> them, unless it is a matter not affecting the merits of the decision upon
> the matter submitted.

(c) Where the award is <u>imperfect in matter of form</u> not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11(emphasis added).  As with vacating an arbitration award, the statutory provision stating grounds for modifying an arbitration award "does not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law."  <u>San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.</u>, 293 F.2d 796, 800 (9th Cir. 1961).

DISCUSSION

The supporting and opposing memoranda relating to Petitioner's Motion to Confirm Arbitration Award rely on the arguments submitted in the supporting and opposing memoranda relating to Respondent's Motion to Vacate or Modify Arbitration Award.  Therefore, the Court will address Respondent's motion first.

I.      <u>Respondent's Motion to Vacate or Modify Arbitration Award</u>

Respondent's motion disputes four elements of the arbitration award: (1) "prejudgment and postjudgment" interest; (2) attorneys' fees and costs; (3) conclusions on duty of good faith and fair dealing; and (4) damages for lost investment time.  The Court will address each in turn.

7

A.     Award of "Prejudgment" and "Postjudgment" Interest

Respondent requests that this Court vacate or modify the arbitration award to the extent it awarded Petitioner prejudgment and postjudgment interest for two reasons:  (1) the issue of interest was not submitted to the arbitrator;[1] and (2) the award violates the State's sovereign immunity.  (Resp't Mot. at 2, 12-14.)

At the outset, the Court notes that the arbitrator did not award "prejudgment and postjudgment" interest; the arbitrator awarded "pre-award" and "post-award" interest.[2]  (Resp't Mot. Ex. J. at 85.)  The arbitrator's award is not a judgment of a court of law.  This Court will address Respondent's arguments as properly set out by the arbitrator, namely, as pre-award and post-award interest.

Respondent correctly notes that arbitrators do not have authority to decide issues not submitted by the parties.  See Hughes Aircraft Co. v. Electronic & Space Technicians, Local 1553, AFL-CIO, 822 F.2d 827 (9th Cir. 1987).  The scope will be determined by both the contract requiring arbitration, and the parties' submission agreement to the arbitrator.  Schoenduve Corp. v. Lucent Technologies,

_____

[1] The Court construes Respondent's claim to fall under section 11 of the FAA, because a court is granted power to modify an arbitration decision, but not vacate, if an arbitrator awards upon a matter not submitted to the arbitrator.  See 9 U.S.C. § 11(b).

[2] The interest rate was set at 10% per annum, pursuant to Hawaii Revised Statutes § 478-3.

Inc., 442 F.3d 727, 732 (9th Cir. 2006).  Respondent neglects to note, however, that an arbitrator's interpretation of the scope of an issue submitted is "entitled to the same deference accorded the arbitrator's interpretation of [an agreement]." Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285 (9th Cir. 1989); Schoenduve Corp., 442 F.3d at 733.

Whether Petitioner was entitled to recover interest was never submitted to arbitration, was not submitted during the hearing, and was not mentioned in the Development Agreement.  (Resp't Mot. at 14.)  In Petitioner's brief to the arbitrator, Petitioner did request damages plus attorneys' fees and costs. (Resp't Mot. Ex. N at 89-96.)

Petitioner argues:  (1) that the arbitrator has general authority to award interest, and a formal request for interest was unnecessary; and (2) granting interest is not an "issue" raised to the arbitrator but is instead a remedy.  (Pet'r Opp'n at 11-14).  In support of its position, Petitioner cites several treatises and case law from outside this Circuit, which stand for the proposition that whether to award interest is within the arbitrator's authority so long as that remedy is within the scope of the agreement of the parties.[3]  (Id.)  This Court's review of authorities

---

[3] See Larry E. Edmonson, Domke on Commercial Arbitration § 35.6, at 35-19 (3d ed. 2009) ("Under both the FAA and the UAA, the arbitrator has broad

(continued...)

within this Circuit does not find law to the contrary.  Respondent's case citation indicating that a court erred in awarding interest was from the Southern District of New York, and in that case, the parties' memorandum of understanding had a clause specifically directing how interest was to be awarded.  See Clarendon Nat. Ins. Co. v. TIG Reinsurance Co., 990 F. Supp. 304, 311 (S.D.N.Y. 1998).  There is no such clause here; the Development Agreement is silent as to interest.  (Resp't Mot. Ex. D.)  Respondent's reliance on Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc., 607 F.2d 649 (5th Cir. 1979), is unavailing.  In that case, the petitioner did not seek damages awarded by the arbitration panel on an issue that was never raised.  Id. at 651.  Unlike Totem Marine, Petitioner has requested damages on an issue raised – breach of duty of good faith in contract negotiations – and the arbitrator awarded interest on those damages.

Other courts have explicitly held that an arbitration award may include pre-award interest, even absent express authority, so long as the amount of the underlying liability can be ascertained with some certainty.  See Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 148 (4th Cir. 1993) ("An

---

[3](...continued)
authority in awarding interest on an award.  The arbitrator has the authority to award interest even if interest has not been claimed by any of the parties, in the absence of contract provisions to the contrary.)

arbitration award under the [FAA] may include preaward interest . . . ."); Gordon

Sel-way, Inc. v. Spence Bros., Inc., 475 N.W.2d 704, 710-711 (Mich. 1991)

(arbitrators have authority to award a measure of interest as an element of

damages); Westminster Const. Corp. v. PPG Indus., Inc., 376 A.2d 708, 711 (R.I.

1977) ("[A]rbitrators may award interest, even if not claimed, unless otherwise

specifically provided by the parties in the agreement.").

      This Court finds the First Circuit's position on this issue to be

persuasive.  In Advest, Inc. v. McCarthy, 914 F.2d 6 (1st Cir. 1990), the First

Circuit held that "arbitrators possess latitude in crafting remedies as wide as that

which they possess in deciding cases.  That leeway is at its zenith, where, as here,

the arbitration clause imposes no limitations on choice of remedies."  Id. at 10-11

(citations omitted).  In the instant case, the Development Agreement's arbitration

clause posed no limitations on choice of remedy.  And in this Circuit, the

arbitrator's determination of scope is entitled to great deference.  See Pack

Concrete, Inc., 866 F.2d at 285; Schoenduve Corp., 442 F.3d at 733.

      Petitioner's request for relief to the arbitrator was broad enough to

encompass interest.  Petitioner's Demand enumerated certain relief but also

requested "such other and further relief as the Arbitrator may determine is

appropriate." (Resp't Mot. Ex. E at 11.) Accordingly, the Court finds that awarding interest was within the arbitrator's scope of authority.

Respondent's second argument is that the award of interest violated the State's sovereign immunity. For lack of a specific claim by Respondent, the Court construes the argument as an alleged violation of section 10 of the FAA, exceeding the arbitrator's power. As discussed above, to prevail, Respondent must demonstrate that the arbitrator's decision to include interest was "completely irrational" or exhibited a "manifest disregard of law" in violation of the State's sovereign immunity protections. See Kyocera Corp., 341 F.3d at 997. Respondent fails to meet this exceedingly high burden.

Respondent relies on case law and Hawaii statute regarding pre- and postjudgments made in a court of law as evidence of the arbitrator's error. But the arbitrator's decision is not a judgment of a court of law. Hawaii Revised Statutes ("HRS") section 661-8, relied on by Respondent, states that: "No interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the court, unless upon a contract expressly stipulating for the payment of interest." The arbitration demand was not a claim and the award was not a judgment by the court, and therefore HRS § 661-8 is not controlling. It is of note that the Supreme Court of Hawaii has reached a similar conclusion regarding a similar statute. HRS

12

§ 431:10-242 provides that when an insurer is ordered by the <u>courts</u> to pay a beneficiary, the beneficiary shall be awarded attorneys' fees and costs of the suit. The Supreme Court of Hawaii concluded that HRS § 431:10-242 <u>did not apply</u> to an arbitration award.  <u>Labrador v. Liberty Mut. Group</u>, 81 P.3d 386, 391 (Haw. 2003).  The arbitrator was aware of the Supreme Court of Hawaii's holding in <u>Labrador</u> because it was referenced in Petitioner's memorandum to the arbitrator. (Pet'r Opp'n Ex. 1 at 7-9.)  Therefore, the arbitrator did not manifestly disregard the law when determining that interest on an award (not judgment) was within its scope of authority.  <u>See also</u> <u>Kalawaia v. AIG Hawaii Ins. Co.</u>, 977 P.2d 175 (Haw. 1999) (holding that the state circuit court did not have the authority to award prejudgment interest for matters occurring prior to arbitration award).

Moreover, Respondent explicitly availed itself of arbitration in paragraph 21of the Development Agreement.  Paragraph 21 states that <u>any</u> claims or disputes, not resolved in good faith, may be brought before a mediator or arbitrator within the jurisdiction of the FAA.  (Resp't Mot. Ex. D at 12.)  The Court finds that the arbitrator did not manifestly disregard the law when determining that the State waived sovereign immunity as to interest in conjunction with its waiver as to damages.

13

B.    Award of Attorneys' Fees and Costs

Respondent requests that this Court vacate or modify the arbitration award to the extent it awarded Petitioner attorneys' fees because:  (1) Respondent had not waived its sovereign immunity for such an award; (2) the calculation of attorneys' fees was in error; and (3) the arbitrator manifestly disregarded the law when awarding attorneys' fees on Respondent's counterclaim. (Resp't Mot. at 2, 17-18.)

1.    Sovereign Immunity

Whether an arbitration clause in a contract, by itself, operates as a waiver of sovereign immunity is a question that does not have a clear answer in this Circuit or in Hawaii state law.  Courts have addressed this issue in the realm of Tribal sovereign immunity, which is instructive here because Indian tribes have "common law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).  The First Circuit has held that whether an arbitration clause waives a Tribe's sovereign immunity turns on the degree of specificity of the terms in the clause.  Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing, 207 F.3d 21, 30 (1st Cir. 2000). "[E]xplicit language broadly relegating dispute resolution to arbitration constitutes a waiver of tribal sovereign immunity."  Id. at 31.  The Eighth Circuit follows this

14

standard, and recognizes that the clause does not need to include "magic words" stating that tribal immunity is waived.  <u>Val-U Constr. Co. of S.D. v. Rosebud Sioux Tribe</u>, 146 F.3d 573, 577 (8th Cir. 1998).

Respondent does not argue that the arbitrator, or this Court, had no jurisdiction over the dispute.  The parties contractually agreed to arbitration, identified the specific arbitrator, and agreed that the dispute and claims fell within the jurisdiction of the FAA.  (Resp't Mot. Ex. D at 12.)  And, it is generally understood that "the FAA [grants] wide authority to the arbitrator to determine entitlement to attorney fees."  Larry E. Edmonson, <u>Domke on Commercial Arbitration</u> § 35.6, at 35-28 (3d ed. 2009).  Having found that Respondent expressly waived sovereign immunity by virtue of its contractual agreement to proceed before an arbitrator, the arbitrator did not manifestly disregard the law when determining that attorneys' fees was within the scope of the waiver.[4]

---

[4] Respondent argues that HRS § 661-12 is relevant to this case.  (Resp't Reply at 9.)  This statute carries no bearing over the instant arbitration.  The arbitrator did not cite to this statute when awarding attorneys' fees.  This statute is limited in application to a civil proceeding before a court of law, which an arbitration proceeding is not.  The statute's cap of attorneys' fees at $7,500, therefore, is not relevant.

###### 2.    Calculation of Attorneys' Fees

The Court rejects Respondent's contention that the arbitrator miscalculated attorneys' fees.  As discussed below in Part I.D., the "damages award of lost investment time" are merely reliance damages, and Respondent's contention that this type of remedy does not exist at law is without merit.

###### 3.    Awarding Attorneys' Fees for Counterclaim

Respondent argues that the arbitrator erred by awarding attorneys' fees based on Respondent's counterclaim in manifest disregard of the law.

The arbitrator may award attorneys' fees and costs pursuant to HRS § 658A-21(b):  "An arbitrator may award reasonable attorney's fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding."  The authorizing civil action cited to by the arbitrator is HRS § 607-14.  This section provides:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . .

Haw. Rev. Stat. § 607-14 (emphasis added).

To prove that the arbitrator acted in manifest disregard of the law, Respondent argues that the negligent misrepresentation counterclaim it filed against Petitioner did not arise out of the contractual relationship between Respondent and Petitioner, and therefore the arbitrator erred in applying contract law principles.  (Resp't Mot. at 18.)  Instead, according to Respondent, the claim is based on representations made by Petitioner before Respondent entered into the agreement.  (Id.)  But, as Petitioner notes, these representations by Petitioner regarding Petitioner's expertise as a developer induced Respondent to enter into the Pre-Development Agreement.  (Pet'r Opp'n at 30.)  The arbitrator applied contract principles of good faith in contract negotiation when denying Respondent's counterclaim.  The arbitrator found that Petitioner was "eminently qualified to serve as the developer on the ATDC project" and "never misrepresented who [Petitioner] was or what [Petitioner's] qualifications were." (Resp't Mot. Ex. J at 84.)

To vacate an award, based on a manifest disregard of the law, the arbitrator must have recognized the applicable law and then ignored it.  Arbitration Between Bosack, 573 F.3d 891 at 899.  The documents before this Court do not indicate that the arbitrator acted in manifest disregard of the law when denying

17

Respondent's counterclaim, nor in determining that the counterclaim was based on contract law that would give rise to attorneys' fees in assumpsit.

    C.    <u>Conclusions on Duty of Good Faith and Fair Dealing</u>

        Respondent requests that this Court vacate or modify the arbitration award to the extent it concluded that Respondent violated the duty of good faith and fair dealing.  Respondent claims this conclusion was in manifest disregard of the law.  (Resp't Mot. at 2, 19-20.)

        The arbitrator concluded:

> [Respondent's] refusal to make its positions clearly or reasonably known effectively prevented negotiations from proceeding in certain important aspects.  The facts also show that [Respondent] either knowingly established deadlines that it could not meet, or that it allowed its procurement actions to drag on to a point where they materially delayed progress.

(Resp't Mot. Ex. M at 66.)  The arbitrator identified several actions, or failures to act, that constituted breach of the duty of good faith and fair dealing.  The arbitrator found that Respondent was unwilling or unable to express its needs or expectations regarding material issues, including lease rent and parking, such that Respondent "made negotiations unreasonably difficult," and "effectively prevented [Petitioner] from making proposals that addressed [Respondent's] concerns."  (<u>Id.</u> at 69.)  Respondent also drafted a 2007 Amended & Restated Development

Agreement ("ARDA") that "did not reflect the scope of any agreement contemplated by the 2006 Agreement" agreed to earlier by the parties, particularly the clause on profit sharing.  (Id. at 72.)  The arbitrator also determined that Respondent "acted unreasonably slow in various aspects," including not retaining consultants and counsel until the six-month deadline to finalize the ground lease almost expired.  (Id. at 69, 71.)

Respondent argues that the agreed-upon standard for breaching good faith was that the arbitrator must find Respondent had intent or motive to completely undermine the 2006 Agreement.  (Resp't Mot. at 20.)  The record does not support this.  The closest evidence Respondent presents is a statement by Petitioner, agreeing that "bad faith means more than just negligence," and the arbitrator's finding that there was no intent to undermine the agreement.  (Resp't Mot. at 19-20.)  This statement in itself does not create a standard of review for the arbitrator.

Instead, the record shows that the arbitrator relied on the express language of paragraph 7 of the Development Agreement and common law contract law when making the determination that Respondent did not act in good faith.  (Resp't Mot. Ex. J at 52-57, 66-68.)  Paragraph 7 of the Development Agreement expressly requires the parties to "negotiate in good faith to enter into such project

Component Agreements and along the parameters set forth in this Agreement." (Resp't Mot. Ex. D at 8.)  The Agreement contained a good faith duty to stay within the bounds of the agreed upon concept, which the arbitrator found Respondent failed to do when drafting the 2007 agreement.

Admittedly, the arbitrator did not provide an expansive explanation of its reasoning.[5]  But as discussed above, to prove manifest disregard, Respondent must show that the arbitrator understood and stated the law, but then disregarded the law.  Respondent simply does not present evidence that the arbitrator disregarded applicable law.  "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it."  Arbitration Between Bosack, 573 F.3d at 899.

D.    Award of Damages for "Lost Investment Time"

Respondent requests this Court vacate or modify the arbitration award to the extent it awarded Petitioner damages for lost investment time based on two reasons:  (1) no such damages exist at law; and (2) Petitioner did not prove damages with reasonable certainty.  (Resp't Mot. at 2, 21-24.)

---

[5] Nor is the arbitrator required to.  See Arbitration Between Bosack v. Soward, 573 F.3d 891, 899-900 (9th Cir. 2009) ("Arbitrators are not required to set forth their reasoning supporting an award.")

The "lost investment time" the arbitrator is referring to is simply reliance damages, a well-established remedy under contract law.  In Petitioner's closing brief, the requested damages are referred to as "reliance damages."  (Resp't Mot. Ex. N. at 96.)  These reliance damages included out-of-pocket pursuit costs, legal fees and costs, and value of time spent on the project.  Additionally, when the arbitrator calculated "lost investment time," those calculations were identified as "reliance damages."  (Resp't Mot. Ex. M at 79.)

In calculating reliance damages for lost investment of time, the arbitrator included the following:  per-hour value of the time expended by Petitioner in reliance of the 2006 Agreement (which Respondent failed to perform in good faith); hard costs incurred relating to the pursuit of the project; and fees and costs for Petitioner's assistants.  There is no evidence before this Court that the inclusion of these factors were in manifest disregard of the law such that the arbitrator was aware of the law and then disregarded it.

Respondent next argues that the damages were not proven with reasonable certainty.  (Resp't Mot. at 24.)  Although Respondent does not clarify under which section of the FAA this argument arises under, the Court will construe this claim as arising under section 11 of the FAA.  Under section 11(a), a court may modify an arbitration decision when there was an "evident material

21

miscalculation of figures."  9 U.S.C. § 11(a).  There is no evidence before the

Court that the arbitrator made a material miscalculation.  Petitioner provided a

sheet of paper estimating the time staff worked.  The arbitrator disagreed with

some of the estimates that were provided, and awarded a value based on the

arbitrator's own estimates.  The arbitrator's rationale was provided in the award,

although not in great detail.  (Resp't Mot. Ex. M at 79.)  The fact that the arbitrator

did not agree with all of Petitioner's damage estimates, and granted the Petitioner

less money than requested, is not evidence of a material miscalculation.  Again, the

burden to modify an arbitration award is high, and not even an erroneous finding of

fact is enough.  See Martine Compania De Navegacion, S.A. v. Saguenay

Terminals Ltd., 293 F.2d 796 (9th Cir. 1961).  Respondent must provide more

evidence for this Court to conclude that there was a material miscalculation that

warrants modification by this Court.

     E.    Public Policy

     Finally, Respondent argues that the arbitration award was against

public policy.  (Resp't Mot. at 25-27.)  Respondent relies on W.R. Grace and Co.

v. Local Union 759, 461 U.S. 757 (1983), wherein the U.S. Supreme Court held

that a court may not enforce a collective bargaining agreement that is contrary to

public policy.  Id. at 766.  This "public policy, however, must be well defined and

dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id. (quoting Muschany v. United States, 324 U.S. 49, 66 (1945)).  For example, the performance of a contract provision that has been enjoined by a judicial order is against public policy.  Id. at 766-67.  On the other hand, a general policy against employee drug use does not articulate a specific public policy that satisfies the standard set out in W.R. Grace.  Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, 886 F.2d 1200, 1210 (9th Cir. 1989).  There is no "broad judicial power to set aside arbitration awards as against public policy." Id. at 1211 (citations omitted).

Respondent does not reference the particular public policy laws and legal precedents that the arbitration award and underlying contract supposedly violate.  Respondent cites "the discretionary function of state development agencies" and the potential "chilling effect on future development projects in the State."  (Resp't Mot. at 25.)  These policy concerns are exceedingly broad.

Respondent invites this Court to vacate or modify the arbitration award but has not provided sufficient grounds for the Court to do so.  Respondent bargained for the arbitrator's interpretation of the law, and is now bound by it.

Accordingly, Respondent's Motion to Vacate of Modify Arbitration Award is DENIED.

II.   Petitioner's Motion to Confirm Arbitration Award

Petitioner moves this Court to confirm the arbitration award and note payment due to Petitioner.  (Pet'r Mot. at 5-6.)  Respondent relies on its Motion to Vacate or Modify Arbitration Award to oppose Petitioner's motion.  (Resp't Opp'n at 2.)  This Court has addressed Respondent's arguments above, and found them to be unpersuasive.

Section 9 of the FAA requires that a court grant an order confirming the award unless the award is vacated, modified, or corrected pursuant to sections 10 and 11.  9 U.S.C. § 9; see Schoenduve Corp., 442 F.3d at 731.  As discussed above, this Court finds no grounds upon which to vacate or modify the arbitration award.  Accordingly, Petitioner's motion is GRANTED.

Pursuant to the arbitration award, (Pet'r Mot. Ex. 5-6), Petitioner is entitled to payment from Respondent in the amount of $1,600,051.73[6] plus interest at the rate of 10% per annum:

---

[6] The Court notes a mathematical error of $0.03 in the original calculation. Petitioner had requested that the court confirm a total amount of $1,600,051.70. The Court has corrected this error pursuant to its authority to modify a material miscalculation of figures.

Reliance Damages $   903,592.49
Pre-Award Interest    $  271,755.44
Attorneys' Fees       $  361,804.07
Costs                 $    62,899.73
Total                 $1,600,051.73
Other                 Interest at the rate of 10% per annum on
                      awarded amount until sum is paid in full

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's Motion

to Confirm Arbitration Award and DENIES Respondent's Motion to Vacate or

Modify Arbitration Award.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 9, 2009.

_____
David Alan Ezra
United States District Judge


Hughes, Inc. v. Aloha Tower Development, Corp., CV No. 09-0027 DAE/BMK;
ORDER (1) GRANTING PETITIONER'S MOTION TO CONFIRM
ARBITRATION AWARD; AND (2) DENYING RESPONDENT'S MOTION TO
VACATE OR MODIFY ARBITRATION AWARD